Okay, our second case today is Grace Ranch versus BP America. We will first hear from Ms. Becker for BP. Good afternoon, Kelly Becker for BP America. This appeal involves two issues. First, the defendants challenged the district court's decision to abstain after finding that it has diversity jurisdiction. And the plaintiff, Grace Ranch, challenges the district court's that it has diversity in the first place. And I plan to touch on both issues. But I want to say right at the outset that I think that this is a unique case, where we have controlling United States Supreme Court authority on all the issues that this court needs to decide. In terms of abstention, Burford, we're nothing like it. In terms of whether the state's the real party in interest, Missouri Railway, we're exactly like it, the state is not the real party in interest. And even if there's a procedural substitution down the line of the commissioner, the Supreme Court's case in Freeport-McMoran said that there is no destruction of diversity. But taking a step back here, I think the nature of this lawsuit is actually germane to both issues of abstention and diversity. And that is Grace Ranch brought this lawsuit under a Louisiana statute that provides that a person in interest adversely affected by an alleged violation of Louisiana's laws of conservation can file its own lawsuit if the commissioner fails to sue. So Grace Ranch here notified the commissioner of conservation of alleged violations involving a historical exploration and production site. And the commissioner chose not to sue. Grace Ranch then filed its own lawsuit that it will prosecute. The defendants removed this action to the Western District because there is complete diversity between Grace Ranch, a Louisiana landowner, and BP and BHP. Both the magistrate and the district court agreed there is diversity jurisdiction here, rejecting Grace Ranch's contention that the state is the real party in interest to a claim under this statute. The magistrate then went further and she recommended not to abstain under Burford, going through a well-reasoned analysis of each one of the factors that this court considers in whether or not to abstain. The district court, however, fell into error when it nevertheless remanded this case based upon Burford abstention, what the Supreme Court has called an extraordinary and narrow exception to the duty of a district court to exercise jurisdiction over a case in which it has jurisdiction. But respectfully, this case is nothing like Burford. Burford involved an oil company's challenge to a drilling permit issued by the Texas Railroad Commission. Burford was actually a suit against the state agency, against the Railroad Commission and the company that had issued a permit. Because of the agency's involvement there, the Supreme Court held that abstention was warranted because Texas had an intricate regulatory scheme regarding the conservation of oil and gas that made all orders of the Railroad Commission appealable to a specific district court, the Travis County District Court, and then to a partners with the agency in developing specialized knowledge of the issues. I want to ask you about that. I mean, here, there's certainly no specialized court, so that last factor favors your side. But there is something similar about the cooperation between the court, whether it's state or federal, and the agency. Because I'm looking at the statute, Section 29, and Part C, which talks about if there is ultimately a finding of liability, it looks like the court is then supposed to work with the Department of Natural Resources to develop a remediation plan. Then they're supposed to actually be at the department holds a hearing, where I guess people can comment on the remediation plan. So you've got the court working with this agency if there's liability established, which to me does seem something more attuned to what a state court should be doing than a federal court having this interaction with state agency over working on a remediation plan. So I don't know if you want to comment on, it's that Part C that to me gives the strongest basis, the strongest color, like maybe there is some room for issue. And that's what we refer to as Act 312 in Louisiana, Revised Statute 3029, which is a procedural overlay that applies in any legacy cases, whether it's a case brought under this state statute, or claims brought for tort or breach of contract, which was that issue in the case that Judge Vance decided whether or not to abstain. That's the Gadrey case. And she was faced with this precise question, because they were saying the court's going to have to go through this procedure after it determines if there is liability. And Judge Vance said, if and when we get to that point, in terms of if I determine that there is liability, I can send it to the agency, the agency will come back to me, and then I can apply the same procedures in Act 312. And Act 312 applies in multiple cases that have been litigated in federal court, the Sweet Lake case, the Alford case. So Burford has not been found warranted under any of those particular situations. Go. Pam, excuse me one second. Yeah, Pam, I noticed the clock has an issue. Okay, there we go. You can go ahead, counsels. Sorry. Thank you. You're going to get a talk all afternoon if we didn't notice. All right, you can continue. Stepping back in terms of why this case is fundamentally different than Burford, which is what the court applied here. There is no administrative procedure to which the court can defer. When the Office of Conservation chose not to sue, the statute authorized a lawsuit, meaning that Grace Ranch's claims are subject to judicial resolution. And in this lawsuit, unlike Burford, Grace Ranch isn't challenging the agency's regulations, it's asking for enforcement of the agency's regulations. And then again, as Judge Passas pointed out, the primary really focus of Burford was whether or not there is a state court that is a working partner, a specialized state court that hears these claims. That's not present here. Any district court in Louisiana can hear a claim brought under this statute. Further, each of the five factors that this court considers in terms of whether to abstain under Burford actually weigh heavily against abstention. And respectfully, the district court's one-paragraph discussion of those issues didn't engage in a meaningful analysis here. And the standard of review is important. It's a two-tiered standard of review in terms of, yes, whether or not the district court abused its discretion to abstain, but this court held in nationwide mutual that a court necessarily abuses its discretion when it abstains outside the confines of the five I do want to ask, the abuse of discretion, it is a little tricky figuring out what that role is in our case law. If you have a situation, I know you disagree, but if you have a situation where say three of the five factors favor one side, two favor the other side, then what's the role of abuse? Is that where abuse of discretion would require some deference to how the district court balanced those competing factors? That's the way I understand it, is that each of the factors you reviewed on a de novo basis, and then you do your own tally as to which one prevails. And then if it's a close call, then it's abuse of discretion. For instance, I think even if three of the five factors were to weigh in favor of abstention, if the district court said, because it's an exceptional circumstance here, I'm not going to abstain, you're going to say that court didn't abuse its discretion. So again, I think the court has to review the facts of each factor de novo. And I do believe if this court goes through that de novo analysis for each of the factors, it is not a close call, and every one of those factors weighs against abstention. I don't think the first two is enough if they weigh in favor of abstention. But I mean, it is a state claim. And there's this unsettled question of state law. I mean, I think three and four are difficult to figure out. But tell me, how do one and two not favor abstention? Absolutely, absolutely. Number one, in terms of whether or not it's a federal or state cause of action, this court's decision in Sierra Club said it's not the mere label of whether or not it's federal or state. It's whether or not this court is going to, the word that the court used in Sierra Club was untangle, a skein of state law that would have to be untangled before the court could proceed to adjudicate the case in federal court. There is no web of state law that needs to be untangled here before this case could proceed. Unlike Sierra Club, Grace Ranch isn't challenging an agency regulation here. In terms of the Rest Nova issue, I 100% disagree with the fact that that could ever necessarily have to be decided here. The Grace Ranch, I believe, led the district court into error by analogizing this case to another case brought under the same state statute that was removed to federal court where ultimately the court decided to abstain because it was presented with ostensibly a Rest Nova issue as to whether or not the statute applied to violations involving past conduct. First of all, there is a distinct possibility that that issue may never come up in this case. And that's because the defendants here have affirmative defenses, which, if granted, would resolve this case at the pleading stage. And those defenses are res judicata and prescription, and that is because this happens to be the second case now that Grace Ranch has brought against the same defendants for the same alleged damage arising out of the same conduct. But more importantly, Your Honor, even if that Rest Nova issue had to be confronted by the court, and I don't necessarily think it would, but if it got to that point, what the magistrate said was absolutely correct. She hit the nail on the head and said, that issue is not currently before the court, and, quote, it is not our province to anticipate what issues may be raised that would cause us to make an eerie guess. And that's exactly, I think, what the court would do. It would make an eerie guess, which is not a basis to abstain, as this court held in Moore v. State Farm, where there, the court was presented with a Rest Nova issue of statutory interpretation involving Louisiana's insurance law, and the court said, that's not enough. The state just has a generalized interest in its insurance law. That is exactly what we have here. Again, the court did not analyze the last factor, which we've all agreed, I would say, weighs in favor of the defendants. There is no special state forum. So at the end of the day, the magistrate was correct in determining that the federal court has jurisdiction and a duty to that it was given. And the district court really did err in abstaining outside the confines of Burford Extension. Its one-paragraph discussion did not engage in a meaningful analysis, and I would urge the court to read the magistrate's report and recommendation on these issues. Briefly, to touch on the diversity issues, every court that has confronted this issue, in terms of whether or not the state is the real party to a claim brought under this statute, every court now has said, no, and has rejected the exact same contention that Grace Ranch has raised. And it's done so, essentially, by looking at two cases. Well, first of all, it looked at the language of the statute. The statute under which they're suing here says, when party and interest can sue, when the commissioner chooses not to sue. Independently, the courts have said, looking at this court's decision in Wolfe v. Wolfe, that the citizenship of nominal parties can be disregarded when determining diversity, they said the state is at most a nominal party under this statute. And they've reached that conclusion by looking at the Supreme Court's decision in the Missouri Railway case. There, the Missouri Railway Commission sued to enforce its own order, where it told the carrier, you need to decrease your rates. And the Supreme Court said, well, hold on a second, the state's not going to be the real party and interest, unless the relief would injure solely to the benefit of the state. But there, the Supreme Court said, all that the state was going to get, Missouri would get compliance with its agency's order. The real relief, the court said, would be to those ratepayers who would be paying less. And that's exactly what we have here. And so far as if injunctive relief is granted down the line, the party that would be getting relief is Grace Ranch, is the landowner. And then finally, Grace Ranch makes a big deal over the fact that the statute talks about a procedural substitution if and only if an injunction is determined to be warranted. At the end of the case, Supreme Court and the Freeport-MacMahon said a Rule 25 substitution of a non-diverse party does not destroy diversity. So respectfully, we do believe that that remand was improperly granted on abstention here when the court has diversity jurisdiction. All right, we have your argument and you'll get time for rebuttal. Thank you. And we'll now hear from Grace Ranch. Good afternoon, Your Honors. Victor Marcello represent Grace Ranch. The first thing I want to address is the court's jurisdiction and want to make it clear that what we have here is a claim under RS 30 colon 16, not RS colon 30 29. So the statute Your Honor was talking about, Judge Acosta, it's mentioned in the petition in the case, but the primary cause action is under 30 colon 16. Is there a similar procedure with agency and court cooperation after liability in the claim you're bringing? The claim we're bringing is very, very simple and very, very narrow. The claim is an equity claim only for injunction. And it's an equity claim that can only be the only remedy that could be obtained in this case is an injunction where the state is a party who has the injunction. Judgment can only be granted for an injunctive relief in the name of the state. Okay, I understand. I understand that. I'm just trying to figure out the mechanics. What happens if you win this case and an injunction is granted in the name of the state or any of those procedures I recited? Do those have to happen or no? It's just the case is over. Close up the those procedures applied to the First Grace Ranch case. And let me explain. The First Grace Ranch case was a case solely under private law and under RS 30 colon 29. Back in 2006, the Louisiana Legislature developed the procedure which would restricted the use of money from private claims in terms of the fact that before that statute, a party could obtain a judgment for a large judgment for damages and not use it to clean up property, his property. And so it restricted his use and said that the money that he gets has to be spent on remediation only to the extent to what happened in this case is that it was dismissed based on what's called a subsequent purchaser rule. And then we filed this case and one of the lead cases. Well, both two lead cases where the Louisiana Supreme Court has actually looked at this statute and mentioned it involved private law damage cases where the plaintiff lost and the justices of the Supreme Court said, look, you do you are not without getting your property cleaned up. You can get an injunction under 30 colon 16. Okay, so let me ask my question a different way. And I think because I'm trying to talk about abstention, which I know maybe I'm getting you out of order here. Oh, that's okay. What what is the the interaction between the courts and agency that you think would happen in this case that warrants a federal court abstaining and staying out? Well, what what I understand, Burford abstention to mean is that the federal government or the federal courts should not be involved in setting precedents and getting involved in making policy, especially policy. It's just that this is a federal court. We would be deciding this undecided issue of Louisiana law. That's the thrust of the abstention argument. No, no, the thrust of the extension argument, at least in my mind, is that what you have here is that you have a person in interest who's actually making the commissioner's claim. And the commissioner has had data on this case. It's issued one compliance order, but has done nothing since that time. And so what we're doing is really alleging the same administrator, the same claim the commissioner would make in court in the event an oil company did not follow its compliance order. So we're acting like the commissioner. That's why the statute turns the matter over to the commissioner after we get a judge. Was I clear on that or not clear? You are, but I guess I'm not sure. I mean, we have attorney generals bring action in federal court under state laws that class actions that can be removed under the Class Act. There's no abstention in those cases. Yes, but I think what happened, at least if you look at the cases decided by Judge Drell, he noted that there were two overarching policy issues. One, I think, prescription. The other is whether, and this is a really very important policy issue, as to whether or not a suit could be filed by the commissioner in order to enforce past violations of his regulations. And that would really gut the commissioner's ability to enforce the entire administrative scheme. Well, if it's all about this one important unsettled question of state law, there's a procedure we use all the time to certify the existence of an unsettled question of state law could not support abstention or we'd be abstaining all the time because we get a lot of unsettled questions of state law where we have to make eerie guesses or alternatively we can certify it if we think it's important enough. I don't disagree with that, Your Honor, but I do want to point out that it's very important that what enforcing regulations. This is a regulatory action and therefore what we're doing is very intertwined with the administrative process. The Knopsey case says you don't have to have an ongoing administrative procedure in order to apply for abstention. As a matter of fact, Knopsey says you can have an administrative procedure or you can have just an administrative order, some relationship that affects in a fundamental way the administration, the procedures of an administrative agency of a state. And I think that's what we have here. But if I may want to get back to the initial jurisdictional issue, in the jurisdictional issue, I think I can summarize very, very easily by pointing out one fundamentally, and that is what we have here is that the district court said there is diversity jurisdiction. And what the court really held was, if you look at it, the essence of it is that the only party who can get a judgment in this case is a party that is not a real party in interest. Basically, the district court held the state is not a real party in interest. And I can't think of one case I've ever seen or read where a party in interest that would destroy diversity is the only party that can obtain a judgment is not a real party in interest. I think undoubtedly the state is a real party in interest. And because the state is a real party in interest, there's no jurisdiction in this court. Now, I understand very well that there are four or five other cases in district courts where the district courts have said the state is not a real party in interest. Well, they based that ruling on the assumption that the Grace Ranch and the plaintiffs in those cases can obtain a judgment in their own name. And then after they obtain the judgment, then the commissioner is substituted or the plaintiff. But that is not what the statute says. The statute says basically that the court hears the case. It's a claim for injunctive relief, a claim in equity, and then it renders a holding. And if a judgment is to be rendered, the judgment is to be in the name of the commissioner. And more importantly, the judgment is to be treated as if the commissioner were the party all along, disregarding altogether the person in interest. So the state is the only real party in interest in this case. And if the state is the only real party in interest, then there's no diversity jurisdiction. Now, Ms. Becker pointed out in her briefing, well, the state won't be a party until after the case is heard in federal court and the plaintiff is successful. Then the commissioner then becomes a party to the case because the judgment is entered in his name. But that's not what the diversity jurisdictions determine. It's determined on who is the real party in interest on the date of removal. And the real party in interest on the date of removal was the state. And the real party in interest now is the state. Basically, we have to look at, and I think the case law points this out, that you have to look at what the substance is of the claim under state law. And under state law, this is solely a state law claim. And under state law, you have a private party in this particular case under 30 colon 16 alleging the commissioner's claim. Um, so the essential nature, the essential nature of this claim is that it's a claim for injunctive relief by the commissioner. Um, uh, so get it sort of sum up. As far as jurisdiction is concerned, Your Honor, I think that if if you follow the strict wording of the statute and the temporal order of what the court does, there will never be a judgment in the name of Grace Ranch. In this case, there cannot be a judgment in the name of Grace Ranch in this case, and therefore there's no jurisdiction. Uh, in terms of, uh, in terms of whether or not, uh, excuse me, uh, in terms of whether or not there needs to be a centralized state court up back onto the, uh, on back onto the, um, Burford issue, whether or not there needs to be a centralized state court. There have been cases in other jurisdictions in the Sixth Circuit caught the coddle case. 301 Federal Threats 6 58 says there doesn't even have to be an administrative agency or administrative proceeding on that. It doesn't have to stem from the Supreme Court's re ruling and Quackenbush, where the Supreme Court there seem to, uh, broaden the types of cases in which federal courts are allowed to rely on its abstention doctrines. It's a matter. Let me ask you if, sir, if the Louisiana Supreme Court decided this legal issue about under this provision, whether landowners can sue for past violations, this overriding legal issue. If today the Louisiana Supreme Court issues an opinion resolving once and for all that question, would you still be arguing that in these cases federal courts need to abstain? I will say this and address it in this way. Judge Drell said in his decisions in both of the cases in district court in the Western District that for now, because you have all these undecided issues and these undecided issues are really issues of public policy in the state and dealing only with uniform administration of administrative policy in the state. At this point in time, abstention is proper. Abstention may not be proper a year from now or two years from now, and I acknowledge that. Okay, my follow-up question is what's the difference then if a court, a federal court, were to just certify the question to the Louisiana Supreme Court? You get that big, important, policy-laden, unresolved question resolved and then, but that's a, but the court's still not abstaining from exercising its jurisdiction, which our case law said is an extraordinary thing to do, but you get the answer that you think is so important. And that, and that is what, that is what gets me back to the issue of discretion. Certainly from what Quackenbush seems to indicate is that federal courts have discretion not to hear cases and they have, and it doesn't necessarily have to be in extraordinary circumstances. It just depends on the facts of the particular case. Right now, we don't have, we have more than one issue about past violations. We have issues regarding whether or not there's res judicata in these cases. There's issues concerning, and a very serious issue concerning prescription, which is bubbling up. There's, it's set for hearing next year, early next year in the First Circuit in Louisiana. There's an issue of prescription because Louisiana statute says that where the, where the legislature does not specifically provide a prescriptive period, there's no prescription and the oil companies are challenging that. Unfortunately, what we have in this particular situation is a statute that has basically been laying dormant for years, but is now being used and there's a whole host of issues that are, are undecided. And I think what Judge Drell was referring to was until there is, until there's a settled state policy and all of these issues are interrelated, the federal courts ought not to be implicating themselves in this matter. And I, again, I emphasize this is an equity case and Quackenbush says this court has discretion in equity cases not to accept jurisdiction. Understanding full well that Burford abstention has a long history of jurisprudence where it is very restrictive and as your Honor said, in extraordinary, used only in extraordinary circumstances. If your Honors have any other questions, I'll be happy to answer. Anything else from the panel? All right, well thank you for the arguments. And we now will hear a rebuttal. Thank you, Judge. To start with your question that you, that you posed to Mr. Marcello about if the Louisiana Supreme Court were to decide this ostensibly Rest Nova issue, would he still be asking to abstain? To be clear, in the, in the Gilbo and Turo case where the judge first abstained based upon that question, that was the only reason that the judge abstained was because he was presented with that Rest Nova issue. He didn't get in, get into other agency procedures or whatnot. He just said, I'm going to abstain because there's this, this Rest Nova issue. And in that particular case, the landowner didn't, didn't raise the need for, for, for abstention based, based upon the, the procedures that, that your Honor alluded to or referred to on, under, under Act 312. And again, that issue, that, that, that Rest Nova issue has not been raised in this case. We are, we were only talking about jurisdiction and it is speculative at, at best as to whether, whether or not that issue may be raised in that case. And in those other cases, Gilbo and Turo, that, that were ultimately remanded based upon abstention, there was no, there was no appeal which would have provided this court the opportunity if it chose to do so to certify to the Louisiana Supreme Court. Counsel, let me ask, when I asked you the question about the post liability finding procedures, you know, you seem to acknowledge that could happen, but then you cited Judge Vance's opinion and says that doesn't create the kind of court agency partnership that would warrant abstention, which I understood your argument. The other side, when I asked that said, those procedures have nothing to do with this claim. So now, but you didn't say that. So now I'm, I'm, I'm just confused. I was only confused and that's because the plaintiff had pled that those procedures apply to this particular statute. Actually it's, it's paragraph 11 of the petition in the record at page 26, where they say that Act 312 and 3029 applies to this case. So that's why I, I, based upon their allegations that, that those procedures may or may not apply here. But if, but if they don't, and that's their position that they don't apply here, then the concerns that your honor raised at the outset don't even come into play because you would never have the, that procedural overlay here. I assume that they pled that, that, that the procedure applies because that statute provides for attorney's fees and Grace Ranch is asking for attorney's fees under that, under that statute, not, not the commissioner. Grace Ranch is asking for attorney's fees under, under 3029. But again, your honor, whether or not 312, 3029 applies to, to this case under this specific state statute, it doesn't change the result. And judge Vance told us why in, in the Gaytree case saying that the federal court could apply that procedure just as well as a, as a state court would. And I want to again, be clear that that procedure would only come into play at the very tail end of the litigation. After Grace Ranch would have prosecuted this claim all the way through trial, the commissioner would never be a party to this case. And if, and only if, and that is a big if, that it prevails on the merits, then that, if, if that procedure applies here, then the federal court could, could apply that, that procedure. Mr. Marcello also said that, that this court, there would never be a judgment in this case in, in favor of Grace Ranch with respect to destruction of diversity. Well, there, there could be a judgment in favor of BP or BHP if it didn't prevail on the merits, meaning that the state, the commissioner would never become a party to this case. But again, even if the commissioner were to become a party at the end of this case, after Grace Ranch proved an entitlement to an injunction on, on the merits, the Supreme Court in Freeport said that that does not destroy diversity. And in the Freeport case, there was a rule 25 substitution of a non-diverse plaintiff before trial, went to trial. There was a jury verdict in favor of the non-diverse plaintiff in that case. So a judgment was rendered in a diversity case in favor of a non-diverse plaintiff. And the Supreme Court said, that's okay. We had a rule 25 substitution. Didn't destroy diversity. Unless the court has any further questions, I will see the rest of my time. All right. Thanks to both sides for the argument. The case is submitted and you may excuse yourself from the Zoom.